Lawrence C. Ecoff, Esq. SBN 143814
Alberto J. Campain, Esq. SBN 204068
**ECOFF CAMPAIN TILLES & KAY, LLP**
A Limited Liability Partnership
280 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Telephone:   (310) 887-1850
Facsimile:   (310) 887-1855
E-mail:      ecoff@ecofflaw.com
             campain@ecofflaw.com

Attorneys for Defendants
HARVEST KING TRADING USA, LIMITED,
THOMAS JAU and PAK LAM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL CORPORATION LTD.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>HARVEST KING TRADING USA, LIMITED, a California corporation, THOMAS JAU, an individual aka TOM JAU; LAM, an individual; PAK LAM, an individual; DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:22-CV-02687-DEF-JEM<br><br>**DEFENDANT HARVEST KING TRADING USA'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFF'S APPLICATION FOR ISSUANCE OF RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**<br><br>Date:   January 31, 2023<br>Time:   10:00 am<br>Ctrm:   640 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

　　　Defendant Harvest King Trading USA Limited ("Harvest King") hereby submits this Memorandum of Points and Authorities in Response to Plaintiff Coastal Corporation, LTD's ("Coastal") Application for Issuance of a Right to Attach Order and Writ of Attachment, pursuant to *Code of Civil Procedure* §483.010 et seq. ("Application").

　　　The Application must be denied because Coastal has failed to demonstrate that it is likely to succeed on the merits for its claim for breach of contract because it has not suffered any damages.  As detailed below Coastal received $126,000 from a

third party, Seafood Doctor, as payment in full for the same cargo that it seeks to recover from Harvest King. Seafood Doctor demanded that Coastal return the purchase price of $126,000, which Coastal refused despite non-delivery of the Cargo. Thus, Coastal has received the $126,000 owed on the subject cargo, has been made whole, and has no damages.

   This Opposition is based upon the instant opposition brief, the attached Memorandum of Points and Authorities, the Declaration of Tom Jau, all files and records herein, those matters upon which the Court is requested to take judicial notice, and upon such argument as permitted at the hearing of this matter.

Dated: January 20, 2023     ECOFF CAMPAIN TILLES & KAY, LLP

               By:  */s/ Lawrence C. Ecoff*
                 LAWRENCE C. ECOFF, ESQ.

                 Attorneys for Defendants
                 HARVEST KING TRADING USA, LIMITED,
                 THOMAS JAU and PAK LAM

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Harvest King Trading USA Limited ("Harvest King") is a distributor of food products, such as beef, pork, chicken, fish, shrimp, lobster and dairy products. (Jau Decl., ¶ 3). Harvest King does not buy products directly from companies in India. Rather, Harvest King buys its products from local vendors and importers.

In 2021, Thomas Jau, a consultant employed by Harvest King, was contacted by Paul Morris, who Mr. Jau understood was working for a company called King's Landing, to discuss the possibility of selling seafood products from Kings Landing to Harvest King. (Jau Decl., ¶¶ 2 and 4). Mr. Jau met with Mr. Morris, and informed Mr. Morris of its needs in terms of quantity, and its price per pound. (Jau Decl., ¶ 5). At all times, Mr Jau and Harvest King solely communicated and negotiated with Mr. Morris. *Id.* Mr. Jau and Harvest King never once communicated with anyone at Coastal. *Id.*

After a series of discussions and negotiations, Harvest King agreed to purchase seven (7) containers of seafood products from Kings Landing, with an agreed upon price and quantity. (Jau Decl., ¶ 6). Unfortunately, the order of seven (7) containers of seafood products from Kings Landing was delayed in receipt and King's Landing refused to deliver the entire quantity ordered and refused to perform the entire contract, on the terms agreed. (Jau Decl., ¶ 7). Harvest King's dispute with King's Landings remains ongoing. (Jau Decl., ¶ 8).

### A. THE COMPLAINT IN THIS ACTION

The Complaint filed by Coastal asserts causes of action for: (1) breach of contract; (2) open book account; (3) account stated; (4) unjust enrichment- quantum meruit; (5) conversion; and (6) trespass to chattel. (Dkt No. 1).

The Complaint alleges that on or about April 28, 2021, Coastal and Harvest entered into two contracts whereby Coastal agreed to sell shrimp to Harvest. (Dkt.

No., ¶ 15). The two contract relate to shipments of 35,000 pounds of shrimp at a price of $3.60 per pound for a total purchase price of $126,000.00. *Id*. The first shipment was transmitted in June 2021. (Dkt No. 1, ¶ 15). The second shipment was transmitted in July 2021 ("Second Shipment"). *Id*. Only the Second Shipment is at issue in this case. (Dkt No. 1, ¶ 17).

With respect to the Second Shipment, Coastal alleges that Coastal informed Harvest that it would not release the goods to Harvest unless Harvest made a payment before release. (Dkt No. 1, ¶ 18). When Harvest indicated an unwillingness to pay before delivery, Coastal canceled the contract. *Id*. To mitigate its damages Coastal sold the Second Shipment of goods to Seafood Doctor. *Id*. Nevertheless, Harvest took possession of the Second Shipment and has refused to pay for it. (Coastal Complaint, ¶ 19). On such basis, Coastal asserts a cause of action for breach of contract.

**B.   THE COMPLAINT IN THE RLI ACTION**

On May 10, 2022, RLI Insurance Company and Seafood Doctor, Inc. filed a complaint in the Central District, *RLI Insurance Company a/s/o Seafood v. Harvest King Trading USA, Limited et al*, case no. 2:22-cv-03173-RSLW-AS ("RLI Complaint"). (Request for Judicial Notice ["RJN"] No. 1). The RLI Complaint alleges that, "On or about 28 April 2021, Harvest King agreed to purchase the Cargo from Coastal for $126,000.00 ($3.60/lb. x 35,000 lbs.) under CY/CY shipping terms, pursuant to which Coastal was responsible for arranging the Cargo's ocean carriage from its facility in Visakhapatnam, India to the Port of Los Angeles." (RJN No. 1, ¶ 18).

Both the Purchase Order and Commercial Invoice that Coastal issued to Harvest King memorialized the payment terms specified above, namely that Harvest King was obligated to pay Coastal in full after the FDA cleared the Cargo and prior to Coastal releasing the Cargo to Harvest King. (RJN No. 1, ¶ 23).

However, while the Cargo was en route, Harvest King advised Coastal that it

would not remit payment until Coastal released the Cargo, so that Harvest King could pick up the Cargo and bring it to Harvest King's facility in Arcadia for inspection prior to payment. (RJN No. 1, ¶ 25). Coastal did not accept Harvest King's attempt to alter the agreed-upon payment terms and advised Harvest King that it was cancelling the sale. (RJN No. 1, ¶ 26).

Coastal then approached Seafood Doctor to purchase the Cargo, and Seafood Doctor agreed to do so for the same purchase price of $126,000.00 and under the same payment terms, namely that Seafood shall remit payment upon clearance of the Cargo by the FDA as a precondition to Coastal releasing it to Seafood Doctor. (RJN No. 1, ¶ 27).

The Cargo arrived at the Port of Los Angeles and cleared by the U.S. Customs and the FDA on October 10, 2021. (RJN No. 1, ¶ 32). **Thereafter, Seafood Doctor wired the $126,000.00 purchase price to Coastal**. (RJN No. 1, ¶ 34). However, Seafood Doctor was unable to collect the Cargo because Harvest King had previously picked up the Cargo at the Port of Los Angeles, (RJN No. 1, ¶ 35). **Seafood demanded that Harvest either return the Cargo or pay for it.** (RJN No. 1, ¶ 37). **Harvest King refused to do either.** (RJN No. 1, ¶ 38). **Seafood Doctor demanded that Coastal return the purchase price of $126,000, which Coastal refused**. (RJN No. 1, ¶ 39).

Having received the payment of $126,000 from Seafood Doctor, Coastal has been made whole and has no damages. While Seafood Doctor may have claims against Harvest King, such claims are not those of Coastal. Coastal cannot establish the probable validity of it breach of contract claim because it cannot establish the final element of damages. Accordingly, the Application should be denied.

///
///
///
///

# II.

# LEGAL ARGUMENT

## A. COASTAL IS NOT ENTITLED TO A RIGHT TO ATTACH ORDER BECAUSE IT HAS NOT MET ALL THE STATUTORY REQUIREMENTS

Attachment is allowed in limited circumstances and is a "harsh remedy because it causes the defendant to lose control of his property before the plaintiffs claim is adjudicated." *Arcata Publications Group v. Beverly Hills Publishing Co.* (1984) 154 Cal.App.3d 276,279 (citations o mitted); *Martin v. Aboyan* (1983) 148 Cal.App.3d 826, 831. To this end, the requirements for the issuance of a writ of attachment are strictly construed against the applicant. *Lyon Productions, Ltd. v. Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459, 1466. It is the applicant's burden to establish each element necessary for an attachment order by a preponderance of the evidence. *Johnson v. Alexander* (1976) 63 Cal.App.3d 806, 811.

In California, the procedures and grounds for obtaining orders permitting prejudgment writs of attachment are strictly governed by statute. Applications for writs of attachment are routinely examined with precision by courts to ensure that all constitutional procedural safeguards are followed.

*Code of Civil Procedure* §484.090 states that in order for the Court to issue a right to attach order, Plaintiff must satisfy the following prerequisites:

1. The claim upon which the attachment is based is one upon which an attachment may be issued;
2. The applicant has established the probable validity of the claim upon which an attachment may be issued;
3. The attachment is not sought for a purpose other than the recovery on the claim upon which the request for attachment is based; and
4. The amount to be secured by the attachment is greater than zero.

Under the Attachment Law, whether or not the defendant appears in opposition, the plaintiff has the burden of proving (1) that his claim is one upon which an attachment may be issued, and (2) the probable validity of such claim. *Loeb & Loeb v. Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1116; *Code of Civil Procedure* §484.090. This means that the plaintiff must establish a prima facie case. *Kemp Bros. Const., Inc. v. Titan Elec. Corp.* (2007) 146 Cal.App.4th 1474, 1484.

If defendant opposes the application, "the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of that litigation." *Loeb & Loeb v. Beverly Glen Music, Inc.*, supra, 166 Cal.App.3d at 1120 (quoting Comment to *Code of Civil Procedure* § 481.190).

Coastal's application should be denied because it cannot establish that it suffered *any* damages because it already recouped the $126,000 from Seafood Doctor for the cargo that is it suing Harvest King.

B. **COASTAL FAILED TO ESTABLISH THE PROBABLE VALIDITY OF THE CLAIM UPON WHICH AN ATTACHMENT MAY BE ISSUED**

As an initial requirement, the claim must be for money, and based upon an express or implied contract. *Code of Civil Procedure* § 483.010(a); *see Korea Water Resources Corp. v. Lee* (2004) 115 Cal.App.4th 389, 402. The moving party is required to establish a "probable validity" of the claim. *Code of Civil Procedure* § 481.190. A claim has "probable validity" where "it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." *Santa Clara Waste Water Co. v. Allied World Nat'l Assur. Co.* (2017) 18 Cal.App.5th 881, 885.

"To prevail on a cause of action for breach of contract, the plaintiff must prove: (1) the contract; (2) the plaintiff's performance of the contract or excuse for nonperformance; (3) the defendant's breach; and (4) *the resulting damage to the*

*plaintiff.*" *Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.

Coastal has not, and cannot, establish the resulting damage based upon Harvest King's nonperformance. Coastal received payment in full in the amount of $126,000 from Seafood Doctor for the subject Cargo. With receipt of such monies from Seafood Doctor, Coastal has been made whole. As a result, Coastal cannot establish the final element of resulting damages to succeed on its claim for breach of contract. Thus, Coastal has failed to establish a "probable validity" of the claim as required by *Code of Civil Procedure* § 481.190. The Application for Writ of Attachment should be denied.

## III.
## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Application for Writ of Attachment.

Dated: January 20, 2023

ECOFF CAMPAIN TILLES & KAY, LLP

By: */s/ Lawrence C. Ecoff*
LAWRENCE C. ECOFF, ESQ.

Attorneys for Defendants
HARVEST KING TRADING USA, LIMITED, THOMAS JAU and PAK LAM